UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) CRIMINAL ACTION |
| v. | ) |
| | ) NO. 4:19-40008-TSH |
| LEROY BYRON, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND MEMORANDUM ON PLAINTIFFS' MOTION TO SUPPRESS EVIDENCE (Docket No. 34)

**September 20, 2019**

**HILLMAN, D.J.**

The United States of America (the "Government") charged Leroy Byron ("Defendant") with possession of a firearm by a convicted felon after officers found a firearm in his waistband during a traffic stop. (Docket No. 1). Defendant moves to suppress evidence of the firearm and certain statements he made to officers. (Docket No. 34). Because the traffic stop was lawful and police officers had reasonable suspicion based on articulable facts that the Defendant was armed, the Court ***denies*** Defendant's motion to suppress evidence of his firearm. Because Defendant's admission that he did not have a license for the firearm was the result of a custodial interrogation, the Court ***grants*** Defendant's motion to suppress his statements to officers.

## Background

On November 5, 2018, at 12:45 am, four members of the Worcester Police Department's Shooting Response Team were in an unmarked police car in the Kelley Square area of the city. They observed a silver Acura TSX approaching the intersection of Harding and Lamartine

1

Streets. (Docket Nos. 34 at 1, 39 at 1–2). As the car slowed and stopped, the officers noticed that the rear brake light on the driver's side was broken. (September 12 transcript at 5, 16). The vehicle travelled towards the intersection of Lafayette and Millbury Streets and took a left-hand turn. (Docket No. 1-1 at 3). The officers activated their lights and pulled over the vehicle. (Docket No. 1-1 at 3).

Officer Bennes recognized the driver as Richard Garcia ("Mr. Garcia"), a member of the Providence Street Posse gang with a violent criminal history. (Docket Nos. 1-1 at 3). Defendant sat in the front passenger seat. (Docket Nos. 34 at 1, 39 at 2). Officer Bennes approached the car and spoke with Mr. Garcia. (Docket No. 1-1 at 3). He noticed Defendant acting nervously and holding onto a bulge in his waistband. (Docket No. 1-1 at 3). Detective Chabot and Officer Turgeon also observed Defendant adjusting an object in his waistband. (Docket No. 1-1 at 3, 39 at 2). Mr. Garcia reached into his glove compartment and retrieved his vehicle registration card. (September 12 transcript at 21). He held the registration card in front of Officer Bennes in an effort to obscure Officer Bennes' view into the vehicle. (September 12 transcript at 7).

Detective Chabot and Officer Turgeon told Officer Bennes that Defendant "kept moving his hands" despite being told to stay still. (September 12 transcript at 9–10). Officer Bennes ordered the driver and passengers to exit the vehicle. (Docket No. 1-1 at 3). After exiting the vehicle, Defendant remained non-compliant by not removing his hands from the area of his waistband. (Docket No. 1-1 at 4). Detective Chabot and Officer Turgeon tried to restrain Defendant, and Detective Chabot shouted "GUN." (September 12 transcript at 11–12, 27–28). After the officers handcuffed the Defendant, Officer Bennes felt the back and handle of a firearm in the front of Defendant's waistband. (Docket No. 1-1 at 4). He lifted Defendant's shirt, and Officer Turgeon retrieved the firearm. (Docket No. 1-1 at 4). The officers asked Defendant for

2

his license to carry the firearm. Defendant indicated that he did not have one. (Docket Nos. 34 at 1, 1-1 at 4).

Defendant was arrested and charged with possession of a firearm by a convicted felon under 18 U.S.C § 922(g)(1). (Docket No. 1). He moves to suppress the evidence gathered during the stop. (Docket No. 34).

## Discussion

*1. Lawfulness of Initial Stop*

Defendant argues that the Court should suppress evidence of the firearm because the Government obtained it during an unlawful traffic stop. A traffic stop by police officers constitutes a "seizure" within the ambit of the Fourth Amendment.[1] *Whren v. United States*, 517 U.S. 806, 810 (1996). It "is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* For a traffic stop to be reasonable, officers must have a "reasonable suspicion that a traffic violation has occurred." *United States v. Chaney*, 584 F.3d 20, 24 (1st Cir. 2009).

Defendant contends that the officers could not have had a "reasonable suspicion that a traffic violation ha[d] occurred" because Mr. Garcia's vehicle had two working brake lights when he was pulled over; one on the passenger's side of the rear of the vehicle and one in the center of the back windshield. (Docket No. 34 at 2). Massachusetts law requires a motor vehicle to have "two rear lights mounted at *each side of the rear* of the vehicle." *See* M.G.L. c. 90 § 7 (emphasis added). Defendant does not dispute that, because the rear brake light on the driver's side was broken, Mr. Garcia's vehicle had only one working brake light mounted on the

---

[1] The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

side of the rear of his vehicle. (Docket No. 39 at 4). The officers thus had reasonable suspicion Mr. Garcia had committed a traffic violation. And because they had reasonable suspicion, the traffic stop was lawful.[2]

### 2. *Reasonable Suspicion to Conduct* Terry *Stop and Pat-Frisk*

Defendant next argues that we should suppress evidence of the firearm because the officers conducting his pat-frisk did not have a reasonable suspicion that he was armed and dangerous. To justify a pat-frisk of a passenger during a traffic stop, an officer must have a reasonable suspicion, supported by "specific and articulable facts," that the passenger is armed and dangerous. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also Arizona v. Johnson*, 555 U.S. 323, 327 (2009). "Reasonable suspicion is a less exacting requirement than probable cause, but requires 'something more than an inchoate and unparticularized suspicion or "hunch."'" *United States v. Tiru-Plaza*, 766 F.3d 111, 116 (1st Cir. 2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). In determining whether an officer had reasonable suspicion, we apply an objective standard and consider the totality of the circumstances. *Id.*

According to Defendant, Officer Bennes had no more than a hunch that Defendant was armed. (Docket No. 34 at 4–5). He contends that, "[o]ther than being understandably nervous, . . . [he] did not act in any manner that would give an officer reason to believe he was armed and dangerous." (Docket No. 34 at 5). The Court rejects this argument. Officer Bennes recognized the driver as a gang member with a violent criminal history. (Docket Nos. 1-1 at 3). While he spoke with that driver, he noticed Defendant holding onto a bulge in his waistband.

---

[2] In response to a question from the Court, Officer Bennes freely acknowledged that the Shooting Response Team stops any car that commits even a minor motor vehicle infraction in Kelley Square in the late night and early morning.

4

(Docket Nos. 1-1 at 3). Detective Chabot and Officer Turgeon similarly observed Defendant adjusting something in his waistband. (Docket Nos. 1-1 at 3).

After the officers ordered the passengers outside of the vehicle, moreover, Defendant continued to keep his hands around his waistband and disobey the officers' orders. (Docket No. 1-1 at 4). It took three officers to restrain and handcuff him. (Docket No. 1-1 at 4). During the struggle, Detective Chabot yelled "GUN" (September 12 transcript at 11–12, 27–28), and Officer Bennes felt the back and handle of a firearm (Docket No. 1-1 at 4). Under the totality of the circumstances, the officers had reasonable suspicion that Defendant was armed and dangerous, and the pat-frisk was lawful.

### 3. *Statements*

Finally, Defendant argues that we must suppress his statements regarding his lack of a license for the firearm. (Docket No. 34 at 1). An officer must give a suspect a *Miranda* warning before subjecting him to a custodial interrogation. *United States v. Trueber*, 238 F.3d 79, 91 (1st Cir. 2001). A traffic stop usually is not custodial in nature. *See id.* A stop may become custodial, however, if "there [is] 'a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Id.* at 93 (1st Cir. 2001) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

By the time Defendant indicated that he did not have a license for the firearm, officers had already placed him in handcuffs. As handcuffs are undoubtedly a restraint associated with a formal arrest, the Court determines that the traffic stop had become custodial in nature. Because Defendant had not yet received his *Miranda* rights, his statements were the unlawful product of a custodial interrogation. The Court therefore ***grants*** the motion to suppress them.

## **Conclusion**

For the reasons above, the Court ***denies*** Defendant's motion to suppress evidence of his firearm and ***grants*** his motion to suppress his statement to officers. (Docket No. 34).

**SO ORDERED**

                                               ***/s/ Timothy S. Hillman***
                                               **TIMOTHY S. HILLMAN**
                                               **DISTRICT JUDGE**